■ VALERIE VIGODA et al., Respondents, v DCA PRODUCTIONS PLUS INC. et al., Appellants. [741 NYS2d 20] —Order, Supreme Court, New York County (Alice Schlesinger, J.), entered August 29, 2000, which denied defendants' motion to dismiss pursuant to CPLR 3211 (a) (7) and 3211 (a) (1), unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

Plaintiffs, as members of a rock band called "Groovelily," entered into a one-year agreement with defendant DCA Productions Plus Inc. (DCA) to act as plaintiffs' personal manager in exchange for a specific percentage of the band's professional revenue. Defendant's services were to include career counseling in addition to acting as a booking agent. Plaintiffs reserved the right to terminate the agreement, which they did on June 2, 1999. At that time, DCA had already submitted an application on plaintiffs' behalf to have them perform at the November 1999 Great Lakes Showcase of the National Association for Campus Activities (NACA). For a performer to appear at a NACA showcase, the performer must be represented by an agent who is an NACA member.

After plaintiffs terminated their agreement with DCA, plaintiffs advised DCA that they wished to continue with DCA as their booking agent. Following negotiations, however, the parties were unable to agree on terms, and the plaintiffs signed with another booking agent, Kate Magill, who had formerly worked for DCA. Under NACA rules, there can only be one booking agent for a performer and an act selected for the showcase may be eliminated if the agency submitting it no longer represents the act. Although NACA had responded to DCA's application on behalf of plaintiffs with a "Letter of Intent," NACA further required that one signed copy must be received by NACA to guarantee plaintiffs' appearance at the showcase.

When DCA learned that one of its former employees had

become the booking agent for plaintiffs, DCA informed NACA that DCA no longer represented plaintiffs. NACA removed plaintiffs from the showcase. Plaintiffs commenced the present action seeking compensatory and punitive damages for prima facie tort, tortious interference with contractual relations, tortious interference with prospective contractual relations and breach of fiduciary duty. The IAS court should have granted defendants' motion to dismiss.

A cause of action for prima facie tort requires that a plaintiff have sustained special damages (*Freihofer v Hearst Corp*, 65 NY2d 135, 142; *Curiano v Suozzi*, 63 NY2d 113, 116). Plaintiffs' complaint sets forth damages in round numbers which amount to mere general allegations of lost sales from unidentified lost customers (*DiSanto v Forsyth*, 258 AD2d 497, 498; *De Marco-Stone Funeral Home v WRGB Broadcasting*, 203 AD2d 780, 781, *lv denied* 84 NY2d 805). All that plaintiffs have alleged is lost future income, conjectural in identity and speculative in amount. As such, this is an insufficient allegation of damages to support a cause of action for prima facie tort.

Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third party's breach of contract without justification, actual breach and damages (*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 424). The NACA Letter of Intent was not a binding contract since it contained an explicit condition precedent for the obligations under the contract to arise, namely that it must be signed and returned by a certain date to guarantee plaintiffs' appearance. Even were we to view the Letter of Intent as having created contractual obligations, defendants' failure to sign and return it did not constitute a breach of contract. NACA rules required that a performing act only have one agent and that the agent who procured the act's appearance remain as agent. DCA merely informed NACA that plaintiffs were no longer represented by DCA, a fact created by plaintiffs. The predictable consequence of plaintiffs' decision was that NACA removed them from the showcase. DCA breached no contractual duty to plaintiffs and procured no breach of a contractual relationship between plaintiffs and NACA.

Tortious interference with prospective economic relations requires an allegation that plaintiff would have entered into an economic relationship but for the defendant's wrongful conduct (*Snyder v Sony Music Entertainment*, 252 AD2d 294, 300; *Schwartz v Society of N.Y. Hosp.*, 199 AD2d 129, 131; *WFB*

*Telecommunications v NYNEX Corp.*, 188 AD2d 257, *lv denied* 81 NY2d 709). As plaintiffs cannot name the parties to any specific contract they would have obtained had they performed at the NACA showcase, they have failed to satisfy the "but for" causation required by this tort.

Plaintiffs have also utterly failed to identify the "wrongful means" used by defendants to interfere with any prospective economic relations. After plaintiffs terminated defendants, all that defendants did was to inform NACA of the uncontested fact that they no longer represented plaintiffs. The parties' failure to negotiate a new agency relationship did not create tort liability on the part of defendants for NACA's predictable and legal removal of plaintiffs from the showcase based on a situation caused by plaintiffs.

While a business relationship can give rise to a fiduciary duty, not every business relationship does (*see, e.g., Levine v Chussid*, 31 Misc 2d 412; *Societe Nationale D'Exploitation Industrielle Des Tabacs Et Allumettes v Salomon Bros. Intl.*, 251 AD2d 137, 138). Where, as here, a party exercises a right to terminate a relationship, fails to renegotiate an agency agreement and hires a new agent, there is no basis to find as reasonable such party's reliance upon the terminated agent. There is, of course, no reason to impose a fiduciary duty on such a discharged agent. We have reviewed plaintiffs' other contentions and find them to be without merit. Concur—Tom, J.P., Andrias, Buckley and Wallach, JJ.