**Myrtha and Hiram HERNANDEZ,**
**Plaintiff,**

v.

**The CITY OF ROCHESTER, Van White, individually and in his capacity as an employee of the City of Rochester, Raymond Littlefield, individually and in his capacity as an employee of the City of Rochester, Robert Grana, individually and in his capacity as an employee of the City of Rochester, Jon Remmel, individually and in his capacity as an employee of the City of Rochester, Peter Saxe, individually and in his capacity as an employee of the City of Rochester, Sgt. E. Weaver, individually and in his capacity as an employee of the City of Rochester, Terrance Borshoff, individually and in his capacity as an employee of the City of Rochester, Defendants.**

No. 97–CV–6280L.

United States District Court,
W.D. New York.

July 11, 2002.

Nira T. Kermisch, Rochester, NY, for Plaintiffs.

Paul D. MacAulay, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

### Procedural Background

Myrtha ("Myrtha") and Hiram ("Hiram") Hernandez (collectively "plaintiffs"), owners of Tito's Corner Grocery Store ("Tito's"), have filed this six-count, second

amended complaint[1] (Dkt. # 41) (hereinafter "Complaint") concerning actions taken by defendants regarding their property during a two-year period from approximately September, 1994 to February, 1996.

Defendants now move, under Fed. R.Civ.P. 56, for summary judgment on all causes of action. Defendants also assert that a qualified immunity defense shields them from civil liability in this case.[2] For the reasons that follow, defendants' motion is granted, and plaintiffs' causes of action are dismissed with prejudice.

### Factual Background

At all times relevant to this suit, a program initiated by Special Counsel to the Mayor of the City of Rochester ("City"), Van Henri White, was in effect to target drug trafficking from houses used as bases of operation in the sale of cocaine and other illicit drugs. Affidavit of Van Henri White, sworn to on 22nd of February, 2002, ¶ 3. This program did not target any stores in Rochester. *Id.* at ¶ 3–4. Contemporaneously, there was a city-wide enforcement effort by the Rochester Police regarding compliance with the penal law, State Division of Alcohol Beverage Control (hereinafter "ABC") regulations and ordinances concerning the hours of operation for commercial establishments. Affidavit of Carl D. Scarpulla, sworn to on 25th of February, 2002, ¶ 3. This enforcement effort was based on a determination that businesses that were open beyond 11:00 pm tended to be the focal point for criminal activity, littering, disorderly conduct, the sale of alcohol to minors and especially

the sale and use of illegal drugs. *Id.* at ¶ 4. This enforcement effort included inspecting shelf inventory to determine compliance with the State Liquor Authority (which limited shelf space for alcohol to 25% of the total space in the store), surveillance, and the enforcement of closing hours. *Id.* at ¶ 5.

### *Location in Question*

Plaintiffs are Hispanic individuals who, at all times relevant to this suit, owned a home and corner grocery store on Bay Street in Rochester, New York. Above Tito's, plaintiffs maintained four apartments for rent. Due to a fire at the commercial property in January, 1994, no more than two apartments were occupied at any one time. Deposition of Myrtha Hernandez, January 25, 2001, pp. 53, 61, 111 (hereinafter "Myrtha's Deposition"). Tito's had a liquor license in the name of Myrtha (*Id.* at 33–34), and sold alcoholic beverages, specifically beer and wine coolers.[3] *Id.* at 20–21. The store also had an auto supply section which sold automobile products such as brake fluid, transmission fluid and motor oil. *Id.* at 20.

The area surrounding Tito's was well know for open drug activity. Deposition of Hiram Hernandez, January 25 & 29, 2001, pg 162 (hereinafter "Hiram's Deposition") During one period spanning approximately from January, 1993, to June, 1994, the Rochester Police Department received over 264 separate calls for service and narcotic activity around Tito's. Affidavit

1. Plaintiffs' second amended complaint lists the following causes of action: (1) 42 U.S.C. § 1985(3) conspiracy to close down Tito's; (2) interference with economic relations; (3) unlawful search; (4) malicious prosecution; (5) racial discrimination; and (6) unlawful seizure.

2. It appears that defendants are protected by a qualified immunity defense. However, the

Court need not consider this as none of the plaintiffs' rights were violated by any actions of the defendants.

3. The liquor license was revoked sometime after June, 1994, by the ABC. ABC noted that a high incidence of criminal activity at the Tito's location was a reason for revoking the license.

of Eric Weaver, sworn to on 25th of February, 2002, ¶ 6.

During all times relevant, Tito's was located in an area zoned "R–3." Hiram's Deposition, pp. 290; Affidavit of Arthur Ientilucci, sworn to on 25th of February, 2002, ¶ 3 (hereinafter "Ientilucci Affidavit"). Under this zoning classification, commercial establishments were restricted to conducting business between the hours of 7:00 am to 11:00 pm. Ientilucci Affidavit, ¶ 3. The only permissible exceptions to these restricted hours would be if a property owner were to obtain a Certificate of Non–Conformity, allowing extended hours based on past practices, or by obtaining a zoning variance. *Id.* at ¶ 4. At no time did plaintiffs apply for either. *Id.* at ¶ 5.

*Violations of Zoning Ordinance*

Beginning on September 13, 1994, based on a Notice and Order signed by Administrator of Code Compliance Raymond Littlefield, plaintiffs were given formal notice that the City considered hours of operation beyond 11:00 pm to be a zoning violation, and that a special permit would be required to remain open after 11:00 pm. A subsequent Notice and Order dated September 28, 1994 reiterated the City's position.

Plaintiffs continued to operate their store past 11:00 pm in spite of warnings and the issuance of numerous tickets by Neighborhood Conservation Officer (hereinafter "NCO") Jon Remmel (dated November 21, 1994, November 28, 1994, December 5, 1994, January 17, 1995,

February 23, 1995, and March 10, 1995).[4] Hiram's Deposition, pp. 193–196, 281–282. The store continued to remain open until 2:00 am until it was closed and boarded up by the City on March 22, 1995. *Id.* at 197–198.

*Violations of Housing Code Provisions*

NCO Peter T. Saxe conducted an inspection of Tito's on February 14, 1995, pursuant to an application for a certificate of occupancy made by plaintiffs. Affidavit of Peter T. Saxe, sworn to on 25th of February, 2002, ¶ 4 (hereinafter "Saxe Affidavit"). From this inspection, over one-hundred violations of the Rochester Housing Code were detected. Saxe Affidavit, ¶ 5; Affidavit of Hiram Hernandez, sworn to on 30th of April, 2002, Exhibit A (hereinafter "Hiram's Affidavit"). These violations included raw sewage on the cellar floor, evidence of rodent and rat infestation in the store and other parts of the building, lack of smoke detectors, weakness of the building's compromised floor joists, an open gas line that had the potential to leak gas, and debris and trash in the public hallways. Affidavit of Terrance Borshoff, sworn to on 25th of February, 2002, Exhibit 3 (hereinafter "Borshoff Affidavit").

Pursuant to an ongoing criminal investigation, the Rochester Police Department executed a search warrant at Tito's on March 22, 1995.[5] During execution of the warrant, the police at the scene then informed Bureau of Property Conservation officers that violations of the health and

---

4. These citations were dismissed on November 29, 1995 by the Appeal Panel of the City's Municipal Code Violation Bureau. The Appeal Panel's dismissal was based upon confusion concerning the definition of "expanded hours of operation," a term used in the citations. The Appeal Panel specifically stated: "Now having said all that, that does not mean now you can now go open up until 2:00 o'clock, okay?" (Docket No. 44, Exhibit 5, pgs. 189–190)

5. As a result of the March 22 raid, police discovered evidence of illegal transactions involving food stamp accounts at Tito's in 1995. Hiram was arrested and charged with seventeen-counts of *Criminal Usury in the First Degree*, was found guilty and received a sentence of three to nine years in state prison. Hiram's Deposition pp. 294–295, Myrtha's Deposition pp. 50.

safety code had been discovered. Upon inspection, many of the violations initially cited on February 14, 1995 were found to be uncorrected. At that time, the decision was made by Property Conservation Officers to close and board up the store and apartments. Plaintiffs were permitted to reopen five weeks later on May 4, 1995, under a partial Certificate of Occupancy. This certificate was issued on condition that certain repairs would be made by June 16, 1995. Borshoff Affidavit, Exhibit 4.

## Discussion

On a motion for summary judgment, a court's responsibility is to determine whether there are issues to be tried. *See Joyce v. Curtiss–Wright Corp.*, 171 F.3d 130 (2d. Cir.1999); *see also Larsen v. NMU Pension Trust*, 902 F.2d 1069, 1073 (2d. Cir.1990). Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Larsen*, 902 F.2d at 1073. A genuine issue of material fact exists only if the record, taken as a whole, could lead a reasonable trier of fact to find in favor of the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Finally, on a motion for summary judgment asserting a qualified immunity defense, the plaintiff has an obligation to offer "particularized evidence of direct or circumstantial facts" supporting a claim of unlawful intent. *See Blue v. Koren*, 72 F.3d 1075, 1083 (2d Cir.1995); *see also Crawford–El v. Britton*, 523 U.S. 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (requiring plaintiff to come forward with "affirmative evidence" of unlawful intent, if it is necessary element of plaintiff's claim, to defeat motion for summary judgment based on qualified immunity).

## The Six Causes of Action

Plaintiffs press six causes of action in this suit. All of these can be disposed of without extended discussion.

*First Cause of Action*

■ Plaintiffs claim in the first cause of action that defendants conspired to take actions which would lead to a loss of plaintiffs' business and to closure of their store. Complaint, ¶ 127. This cause of action fails, as plaintiffs have not offered sufficient evidence to sustain their conspiracy action.

It is well established that in order to demonstrate a § 1985(3) conspiracy[6], a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. *See Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir.2000); *see also Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993). Further, a § 1985(3) claim must involve a deprivation of rights as a result of some racial, ethnic or class-based animus on the part of the defendants. *See Zemsky v. City of New York*, 821 F.2d 148, 151 (2d Cir.1987). Conclusory, vague and general allegations of conspiracy are not sufficient to establish the existence of § 1985 violations. *See*

---

**6.** Plaintiffs' original complaint contains no mention of § 1985(3) in the first cause of action, referring simply to "conspiracy." It is in their response to defendants' motion for summary judgment that reference is first made to § 1985(3).

*Ostrer v. Aronwald,* 434 F.Supp. 379, 390 (S.D.N.Y.1977), *aff'd,* 567 F.2d 551, 553 (2d. Cir.); *see also Thornton v. City of Albany,* 831 F.Supp. 970 (N.D.N.Y.1993).

Plaintiffs fail to present any evidence establishing any racially discriminatory conduct on the part of any of the defendants. Without establishing that racial or ethnic animus was a motivating factor for the alleged conspiracy, the cause of action cannot stand. Additionally, plaintiffs have not satisfied their burden of producing particularized evidence of the requisite unlawful intent. *See Blue,* 72 F.3d at 1083. Plaintiffs provide no admissible proof that defendants engaged in any concerted effort to deprive them of equal protection, or any rights or privileges based on their race or ethnic background. In fact, the evidence presented by both plaintiffs and defendants demonstrates that there were several legitimate reasons for defendants to cite and search plaintiffs' property, none of which were motivated by race or ethnicity.

Plaintiffs ask this Court to overlook their acknowledged violation of city zoning ordinances, as well as numerous health and safety code violations, and infer a conspiracy based only upon a newspaper report announcing the creation by defendant White of a neighborhood crime and violence prevention program. Hiram's Affidavit, ¶ 19. Plaintiffs ask too much. Because plaintiffs have provided no proof that demonstrates the existence of a § 1985(3) conspiracy, their first cause of action is dismissed.

*Second Cause of Action*

In their second cause of action, plaintiffs claim that defendants engaged in a course of conduct designed to cause them loss of business and to scare away their customers.[7] Complaint, ¶ 141. As was the case concerning the first cause of action, plaintiffs fail to support this allegation with sufficient evidence to withstand defendants' motion for summary judgment.

■ To state a prima facie case of tortious interference with a prospective business relationship under New York law, the plaintiffs must show: "(1) business relations with a third party; (2) the defendant[s'] interference with those business relations; (3) that the defendant[s] acted with the sole purpose of harming the plaintiff[s] or used dishonest, unfair, or improper means; and (4) injury to the business relationship." *See Astor Holdings, Inc. v. Roski,* 2002 WL 72936 at *19 (S.D.N.Y. Jan. 17, 2002). A claim sounding in interference with economic relations must contain an allegation that relations would have occurred but for the wrongful interference. *See Vigoda v. DCA Productions Plus Inc.,* 293 A.D.2d 265, 741 N.Y.S.2d 20, 23 (1st Dept., 2002). In this tort action, like any other, plaintiffs must establish that they have suffered actual damages.

■ In opposing summary judgment, plaintiffs have chosen only to rely only on allegations from their complaint, conclusory statements, and a vague assertion that "up until defendants started the harassment of plaintiff[s], plaintiffs had a certain level of business which then declined."[8]

---

7. In both the complaint and response to defendants' motion for summary judgment, plaintiffs incorrectly assert that this claim involves a Fourth and Fourteenth Amendment violation. "Because plaintiff[s] [were] deprived of the ability to sell, [their] rights under the Fourth and Fourteenth Amendments were violated." Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, pp. 17 (Dkt. # 50) (hereinafter

"Plaintiffs' Response"). This cause of action is in fact a state claim sounding in interference with economic relations.

8. Defendants direct the Court to Hiram's Deposition, pgs. 266–267, where plaintiff admits that filed income tax forms indicate an *increase* in commercial profits between the years of 1994 and 1996.

Plaintiff's Response, pp. 17. Plaintiffs' decision not to set forth specific facts showing there is a genuine issue for trial, but rather to rest upon their initial allegations, is not sufficient to defeat a motion for summary judgment. Fed.R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and "designat[ing] 'specific facts showing that there is a genuine issue for trial.' ").

Plaintiffs fail to submit evidence demonstrating that defendants acted with the intention of harming them, or that defendants used any dishonest, unfair, or improper tactics to accomplish this end. This failure of proof warrants dismissal.

Plaintiffs have also failed to allege specific damages, instead contending only that they were deprived of income because of defendants' actions. This alleged loss is based solely on conjecture and is accompanied by no evidence demonstrating any particular loss of business. Plaintiffs seem to acknowledge this cause of action's lack of merit, as they dedicate minimal energy to its defense in their responding papers. This cause of action is dismissed.

*Third Cause of Action*

■ In their third cause of action, plaintiffs allege that defendants unlawfully searched and/or inspected Tito's without a warrant. Complaint, ¶ 152. Beyond broad denials and conclusory allegations in their affidavits, plaintiffs proffer no evidence supporting their claim that any of defendants' warrantless searches were illegal. *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548; Fed.R.Civ.P. 56(e). Specifically, they have failed to demonstrate that defendants' searches of Tito's were without probable cause, or that it infringed a legitimate expectation of privacy.

An expectation of privacy does not give rise to Fourth Amendment protection unless society is prepared to accept that expectation as objectively reasonable. *See California v. Greenwood,* 486 U.S. 35, 39–40, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); *see also U.S. v. Pena,* 961 F.2d 333, 337 (2d. Cir.1992). A police officer who examines a store's merchandise left exposed to all who frequent the store does not infringe a legitimate expectation of privacy, and therefore his acts do not constitute a search within the meaning of the Fourth Amendment. *See Maryland v. Macon,* 472 U.S. 463, 469, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985). Here, plaintiffs fail to set forth evidence that any "search" of their store by the Rochester Police officers was unlawful. In fact, plaintiffs admit that the only time a police officer (Sgt. Weaver) went into the private basement was with Hiram's consent. Hiram's Deposition, pp. 217–219. I find no evidence that the Rochester Police ever took actions that infringed upon plaintiffs' reasonable expectation of privacy.

Concerning the administrative inspections commenced by NCO Robert Grana and Saxe, plaintiffs have once again failed to meet their burden of proof. While plaintiffs deny ever consenting to the February 14, 1995 inspection, testimony by Saxe that this inspection was rescheduled by Hiram on February 1, 1995 is supported by a form submitted by plaintiffs indicating that Grana had arranged the inspection with Hiram. Saxe Deposition, pp. 17; Hiram's Affidavit, Exhibit B. Further, this evidence indicates that the February 14, 1995 inspection was a follow up to a previous inspection made pursuant to plaintiffs' May 31, 1994 application for a Certificate of Occupancy. Hiram's Affidavit, Exhibit B. Plaintiffs' assertion that Saxe's February 14, 1995 inspection was without permission is belied by their own

submissions which indicate that Hiram initiated and rescheduled the inspection.

Plaintiffs choose to oppose defendants' evidence of numerous code violations by simply denying that these violations ever existed. Plaintiffs, however, have failed to submit any evidence to this Court that the citations made by Saxe and Grana for health and safety violations were appealed or challenged in any administrative proceeding. Plaintiffs have failed to set forth specific facts demonstrating a genuine issue concerning the existence of these violations. A party opposing summary judgment on grounds that there exist genuine issues of material fact must respond with more than simply a general denial. FedR. Civ.P. 56(e); *see also Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983). Plaintiffs denial that these violations ever existed, without evidence to support this contention, is insufficient to create a genuine issue of material fact for trial.

The evidence before the Court paints a picture of an establishment containing numerous health and safety violations which endangered the welfare of both tenants and store patrons. Both plaintiffs and defendants agree that no repairs had been made to the building between the February 14, 1995 inspection and the execution of the search warrant on March 22, 1995. I do not find that the March 22, 1995 inspection by Saxe and Grana was objectionable since many of the obvious and numerous health and safety violations were plainly visible to the police officers executing the warrant. The police officers' report that many violations were visible to them provided Saxe and Grana with sufficient grounds to initiate the inspection. *Cf. U.S. v. Reyes,* 283 F.3d 446, 468 (2d Cir.2002) (confirming that probation officers who lawfully observed marijuana plants in plain view and who were themselves authorized to seize the plants could properly elect as a matter of policy to have DEA agents seize the contraband). Under the circumstances presented, it was proper for the police to pass on information about the numerous code violations to the inspectors who properly acted on that information. Plaintiffs have failed to submit evidence to this Court indicating that any inspection of their building was unlawful and, therefore, defendants are entitled to a judgment as a matter of law concerning this cause of action.

*Fourth Cause of Action*

■ In their fourth cause of action, plaintiffs allege that defendants Weaver and Officer Jon Remmel maliciously charged them with operating the store beyond its permitted hours of operation. Complaint, ¶ 161. This claim, like the others, is dismissed for lack of evidence establishing that there is a genuine issue for trial.

To state a claim for malicious prosecution, plaintiffs must show (1) defendants commenced a criminal proceeding against them; (2) the proceeding ended in the plaintiffs' favor; (3) defendant did not have probable cause to believe that plaintiffs were guilty of the crime charged; and (4) defendants acted with actual malice. *See Cook v. Sheldon,* 41 F.3d 73, 78 (2d Cir. 1994). I agree with defendants that the dismissal of the citations by the Appeals Panel of the Municipal Code Violations Bureau was not a proceeding ending in the plaintiffs' favor. Examination of the record clearly shows that the citations were dismissed because the terms used on their face were confusing, not because the citations lacked merit. Plaintiffs also fail to provide any evidence that defendants lacked probable cause in citing them for zoning ordinance violations, or that defendants acted with malice. The undisputed evidence is that Officer Remmel in fact "did his homework" before issuing the citations: he researched the required closing

time for a commercial establishment in an "R–3" zone and checked whether or not plaintiffs had acquired a Certificate of Non–Conformity or had been granted a zoning variance. I find that the record establishes as a matter of law that the required factors needed to establish a case of malicious prosecution are not present in this case. Therefore, plaintiffs' malicious prosecution cause of action is dismissed.

*Fifth Cause of Action*

Plaintiffs' fifth cause of action alleges that they were the targets of race discrimination by defendants. Frankly, it is unclear under what statute plaintiffs are pursuing this claim.[9] In any case, plaintiffs have set forth no evidence to support this claim.

Plaintiffs assert that because a nearby A Plus Mini–Mart (alleged by Hiram to be owned by Caucasians) was not the subject of ongoing contact with City police and NCOs, and plaintiffs, Hispanic shop owners, were the subject of such interaction, establishes race discrimination. At his deposition, however, Hiram damaged his own case when he complained that other Hispanic-owned stores (referred to as "Carlos" and "Rivera") were *not* scrutinized by City officials as his store had been. Hiram's Deposition, pgs. 316–317. This negates the claim that the police activity was race based.

All defendants affirm in affidavits that race was not a motivation for their ongoing interaction with Tito's, and plaintiffs present no evidence beyond conclusory allegations that ethnicity had anything to do with defendants' actions. Since plaintiffs fail to provide proof in any admissible form

to establish a case of race discrimination, their cause of action must be extinguished.

*Sixth Cause of Action*

■ In their final cause of action, plaintiffs allege the closure of Tito's amounts to illegal seizure under the Fourth and Fourteenth Amendments. Complaint, ¶ 189. This cause of action is without merit.

An unauthorized deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). This rule relies on the rationale that when deprivations of property are effected through random and unauthorized conduct of a state employee, pre-deprivation procedures are simply impracticable since the state cannot know when such deprivations will occur. *See Hudson*, 468 U.S. at 533, 104 S.Ct. 3194.[10] In responsive papers, plaintiffs merely allege that *Hudson* is not controlling in this instance, without providing any basis to distinguish the case. I find nothing to indicate that the *Hudson* court intended to limit its holding only to prison cases, or that the fact prisoners have a limited expectation of privacy under the Fourth Amendment makes the rationale any less valid. It appears to this Court that plaintiffs had an adequate post-deprivation remedy available to them, in the form of an Article 78 proceeding. Thus, plaintiffs have suffered no due process violation. Any injury suffered by the plaintiffs was caused only by their failure to pursue a remedy available to them.

---

9. In their Complaint, plaintiffs allege violations of 42 U.S.C. § 2000 a–1, 42 U.S.C. § 1985, and "State Laws." Complaint, ¶ 180. At argument, plaintiffs' counsel stated "if I referenced [Title VII], it is wrong."

10. Defendants point out that a post deprivation remedy was available to plaintiffs in the form of an "Article 78" proceeding. Borshoff Affidavit, ¶ 14. Plaintiffs submit no evidence to the Court that an Article 78 proceeding was ever initiated.

152

## Conclusion

Defendants' motion for summary judgment (Dkt. # 44) is granted. The complaint is dismissed with prejudice.

IT IS SO ORDERED.