World Baseball Network LLC v Wolf & Bear Mktg. Inc. (2025 NY Slip Op 50258(U))

[*1]

World Baseball Network LLC v Wolf & Bear Mktg. Inc.

2025 NY Slip Op 50258(U)

Decided on February 28, 2025

Supreme Court, Westchester County

Giacomo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 28, 2025
Supreme Court, Westchester County

World Baseball Network LLC and Louis Tallarini, Plaintiffs,

against
Wolf and Bear Marketing Incorporated, EDWARD SMITH and SABRINA SEETARRAM, Defendants.

Index No. 66264/2024

Attorney for Plaintiffs:
Daniel S. Szalkiewicz, Esq.
Daniel Szalkiewicz & Associates, P.C.
23 West 73rd Street, Suite 102
New York, New York 10023
(212) 706-1007
Attorney for Defendant Seetarram:
Lee A. Pollock, Esq.
Pollock & Associates Law, PLLC
115 East Stevens Avenue, Suite 109
Valhalla, New York 10595
914 752-4335
Defendant Edward Smith, acting pro se.

William J. Giacomo, J.

In this underlying action for breach of contract, fraud, among other claims, in motion sequence 001, defendant Edward Smith (Smith), acting pro se, moves pre answer, pursuant to CPLR 3211 to dismiss the complaint. In motion sequence 003, defendant Sabrina Seetarram [*2](Seetarram) moves pre answer, pursuant to CPLR 3211 (a) (1) and (7), to dismiss the amended complaint. Motion sequence numbers 001 and 003 are hereby consolidated for disposition. 
Papers Considered NYSCEF Doc No. 8-17; 32-59
1. Notice of Motion/Affirmation in Support of Edward Smith/Exhibit A
2. Affirmation of Daniel S. Szalkiewicz, Esq. in Opposition/Exhibits 1-5
3. Notice of Motion/Affirmation of Lee A. Pollock, Esq. in Support/Affirmation of Sabrina Seetarram/Affirmation of Edward Smith/Exhibits A-J/Memorandum of Law in Support
4. Memorandum of Law in Opposition/Exhibits 1-4
5. Memorandum of Law in Reply/Reply Affirmation of Lee A. Pollock, Esq./Exhibit J
FACTUAL AND PROCEDURAL BACKGROUND
On July 29, 2024, plaintiffs World Baseball Network LLC (WBN) and Louis Tallarini (Tallarini) (collectively, plaintiffs) commenced the instant action by filing a summons and complaint. Plaintiffs subsequently filed an amended complaint (AC), which is the subject of this decision. The AC alleges that Tallarini, WBN's President and Board Chairman, hired defendant Wolf and Bear Marketing Incorporated (Wolf and Bear) as an independent contractor "to bring his son's dream of creating an international baseball website to digital fruition." Tallarini had previously worked with Wolf and Bear on projects and had interfaced with Smith, one of Wolf and Bear's owners. In December of 2021, Tallarini asked Smith if Wolf and Bear would create WBN's website. The AC alleges that Smith, on behalf of Wolf and Bear, agreed. Smith "also indicated that his partner, Sabrina Seetarram, would be joining him on this project, though she would not become involved until Spring of 2022 when WBN began utilizing Wolf and Bear's social media marketing services."
Tallarini and Smith then "entered into a simple agreement — memorialized by letter — which called for WBN to pay Wolf and Bear $1,000 monthly, at least to start, in addition to a one-time payment of $5,000 for the initial website build." Although some of the invoices had been over the agreed-upon amount, Tallarini paid them, "relying on Defendants' representations and a years-long relationship with Smith." Starting in October 2022, without receiving invoices, plaintiffs just paid recurring monthly payments of $4,000 to Wolf and Bear. The AC states that "[d]efendants led Plaintiffs to believe the work they were doing for WBN was a significant undertaking and that claimed they were not just meeting but exceeding the goals they had set for themselves." For example, Smith sent an email to Tallarini stating that due to Wolf and Bear's services, WBN had 3 million email opt-ins consisting entirely of individuals who were interested in baseball. However, "upon information and belief, Smith never possessed such a list of e-mails and only represented he did to continue and further his ruse that Wolf and Bear was adding value to WBN." The AC claims that both defendants had complete control over WBN's e-mail accounts, social media pages, websites, passwords, domain names, and other data integral to WBN's existence and success. 
In brief, the AC sets forth that as WBN expanded, "Smith and Seetarram clashed" with the new team members and advisors and refused to make requested changes to the website. WBN decided that it could not continue to use Wolf and Bear for its marketing, website and emails. In July 2023, Tallarini advised Smith that WBN was going to use a different web developer but that Wolf and Bear would continue working with WBN in a different role.
However, on September 1, 2023, Wolf and Bear informed plaintiffs by letter that it was dissolving the relationship with them going forward. The letter demanded payments for other alleged invoices in the amount of $87,582.00 and set forth that if the payments were not made by September 10, 2023, "information your company will require for your new hosting company and technical consultant to move the website, emails, and domains" would be purged. The AC states that "WBN paid the ransom and awaited return of their passwords, account information, video content, and other data." The AC alleges that Smith and Seetarram split the money almost evenly; namely, Wolf and Bear sent payments equaling almost half the of the money to Seetarram through her Chocolate Box Zelle account and to Spartan Builders, Incorporated, which is owned by Seeterram's partner. 
The AC continues that, after plaintiffs paid the money, defendants made dozens if not hundreds of derogatory and/or defamatory social media posts about WBN. Wolf and Bear started by posting a picture of a hooded man in a black mask with a caption stating that all of WBN's data was purged. Wolf and Bear subsequently registered the domain name boycottworldbaseball.com, created a Facebook account with the same name and posted accusations of unfair hiring practices and discrimination against WBN. As an example, defendants' website allegedly stated "WBN exploits Latin and Black players," and stated that Tallarini's son refused to acknowledge a female board member in meetings and zoom calls. As set forth at length in the AC, defendants also purportedly created fake twitter accounts to falsely portray plaintiffs in a sexist, racist and discriminatory manner, created social media accounts impersonating WBN and Tallarini's son, and "began inundating WBN's website with negative comments." 
The AC alleges that, after a new company was hired to work on WBN's website and social media, plaintiffs realized that defendants had done minimal work, yet billed plaintiffs for tens of thousands of dollars. Some of the invoices were allegedly patently false. For example, although some had been billed by Martin Jordan, a programmer, the invoices were created by Wolf and Bear. 
Plaintiffs sent defendants a "cease and desist letter" on December 21, 2023, which "pleaded with Defendants to stop their harassing conduct and allow plaintiffs to continue operating without being under constant online attack." The AC continues that Smith eventually responded to plaintiffs' letter, indicating he had removed the negative social media posts and website "[a]s a show of good faith toward resolution."
On January 26, 2024, Tallarini received a notice that Smith had filed a claim for unemployment, naming WBN as a former employer. WBN responded that Smith was never an employee of WBN. Smith then sent plaintiffs a draft lawsuit demanding over $300,000, alleging claims of emotional distress, among others, and requesting for plaintiffs to settle instead. With respect to Seetarram, the AC states that "Seetarram also delivered to Tallarini a copy of a draft lawsuit with salacious, utterly false, and, at times, completely nonsensical allegations about Tallarini and the WBN team which she threatened to file if a settlement was not reached." 
The AC alleges ten causes of action against defendants. For the sake of brevity, the causes of action and the parties' arguments will be addressed in the discussion below. 
DISCUSSION
A motion to dismiss a complaint pursuant to CPLR 3211 (a) (1) may be granted only if the documentary evidence submitted by the moving party utterly refutes the factual allegations of the complaint, "conclusively establishing a defense as a matter of law." Endless Ocean, LLC [*3]v Twomey, Latham, Shea, Kelley, Dubin & Quartararo, 113 AD3d 587, 588 (2d Dept 2014). On a motion to dismiss pursuant to CPLR 3211 (a) (7), "the facts as alleged in the complaint [are] accepted as true, the plaintiff is [given] the benefit of every possible favorable inference," and the court must determine simply "whether the facts as alleged fit within any cognizable legal theory." Mendelovitz v Cohen, 37 AD3d 670, 671 (2d Dept 2007). However, "bare legal conclusions as well as factual claims flatly contradicted by the record are not entitled to any such consideration." Silverman v Nicholson, 110 AD3d 1054, 1055 (2d Dept 2013) (internal quotation marks and citation omitted). 
Pursuant to CPLR 3211 (a) (5), in pertinent part, a party may move to dismiss on the ground that a cause of action may not be maintained because of res judicata or collateral estoppel. "Under the doctrine of res judicata, a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter. The rule applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation." Matter of Singer v Windfield, 125 AD3d 666, 667 (2d Dept 2015). 
Motion sequence 001
At the outset, after defendants moved for dismissal, plaintiffs amended their complaint and only Seetarram filed a new dismissal motion in response. However, "inasmuch as the amended complaint superseded the original complaint and [Smith does] not dispute that the amended complaint is the operative pleading, we consider [Smith'] pre-answer motion as seeking dismissal of the amended complaint." Mid-Hudson Val. Fed. Credit Union v Quartararo & Lois, PLLC, 155 AD3d 1218, 1219 n 1 (3d Dept 2017), affd 31 NY3d 1090 (2018). 
According to Smith, this action should be dismissed, as the matter was already dismissed by the Honorable Robert S. Ondrovic, J.S.C., under a different index number. 
The record indicates that plaintiffs initiated this action under Index Number 57514/2024. On June 20, 2024, plaintiffs' counsel was late for the preliminary conference and the Court dismissed the action without prejudice for failure to appear. "Pursuant to 22 NYCRR 202.27, a court has discretion to dismiss an action where a plaintiff fails to appear at any scheduled call of a calendar or at any conference." Bank of Am., N.A. v Banu, 231 AD3d 781, 782 (2d Dept 2024) (internal quotation marks and citation omitted). However, as this was a dismissal pursuant to 22 NYCRR § 202.27, it was not a dismissal on the merits and does not preclude this timely action from being filed. See e.g. Knobel v Demba Wei, LLP, 184 AD3d 425, 425 (1st Dept 2020) (internal citations omitted) ("As the dismissal of a prior action commenced by Demba Wei, LLP for failure to attend a calendar call (22 NYCRR 202.27 [b]) was not on the merits, it does not have res judicata effect. Therefore, the parties were not precluded from commencing subsequent independent actions"). 
Smith also argues that the action should be dismissed, as the matter was already resolved pursuant to a settlement and release. However, Smith cannot support this contention, as he only submits a copy of a draft of a settlement agreement, not signed by either party. 
Accordingly, for the reasons provided, Smith's motion to dismiss the complaint is denied.
Motion Sequence 003
Breach of Contract-First Cause of Action
In order to recover damages for breach of contract, plaintiff must demonstrate the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach. See Investment Retrievers, Inc. v Fox, 150 AD3d 1090 (2d Dept 2017). 
The AC alleges that Smith, on behalf of Wolf and Bear, agreed to create WBN's website. Further, Smith "indicated that his partner, Sabrina Seetarram, would be joining him on this project, though she would not become involved until Spring of 2022 when WBN began utilizing Wolf and Bear's social media marketing services." Tallarini and Smith, on behalf of their respective organizations, then entered into an agreement, which had been memorialized by letter. The first cause of action alleges that defendants breached the agreement with plaintiffs by failing to perform the agreed upon services. The AC also alleges that Seetarram exercised sole control over WBN's social media accounts. 
Seetarram does not dispute that Wolf and Bear had an agreement with WBN, but argues that this cause of action should be dismissed because the AC never alleged that she had a contract with plaintiffs. She also claims that, even if she was a shareholder, she could not be held personally liable for the corporation's contractual obligations. Smith submits an affirmation in support of Seetarram's motion. He states that he is the sole director, officer and shareholder of Wolf and Bear and that Seetarram is not an owner or partner. He also provides documentation, such as Wolf and Bear's certificate of incorporation, which allegedly supports his affirmation. 
In opposition, plaintiffs argue that Seetarram can be personally held liable for the corporation's breach of contract and fraudulent conduct as she exercised complete domination over the corporation and used it to commit a wrong against plaintiff. As an example, the AC alleges that defendants allegedly used the corporate assets to share the money they wrongfully took from plaintiffs. Plaintiffs also claim that Wolf and Bear have, among other things, failed adhere to corporate formalities.
In general, "piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." Morris v State Dept of Taxation & Fin., 82 NY2d 135, 141 (1993).
In sum, Seetarram argues that she was not a partner or shareholder of Wolf and Bear. However, at this time, the AC has sufficiently alleged that Seetarram may be held liable for Wolf and Bear's breach of contract. To start, defendants' affidavits "fail to meet the requirement for documentary evidence" and the documentary evidence submitted by Smith fails to "utterly refute[] the factual allegations of the complaint . . .." Gawrych v Astoria Fed. Sav. & Loan, 148 AD3d 681, 682 (2d Dept 2017).
On the contrary, submitted with the amended complaint is the letter Wolf and Bear sent to plaintiffs threatening to purge WBN's website if the plaintiffs did not pay $87,582 within ten days. In this letter, Smith references Seetarram and states "we are dissolving the relationship going forward. I do not feel it necessary to waste further time and resources of myself, my partner, or members of my company." Further, in the social media postings made by Wolf and Bear which disparaged WBN, Smith refers to his "business partner." 
The invoices demanded by Wolf and Bear showed monthly charges totaling $6,500 reflecting "adjustments," of $5,500, and are not linked to any services provided to WBN. Notably, one of the "adjustment notes" states that "Lou Tallarini offered partnership in the venture in lieu of pricing consideration. Mentioned in December 2021 meeting. Confirmed at [*4]1/7/22 meeting with Sabrina Seetarram. Eds title Technical Director, Sabrina's Media and Marketing." After plaintiffs paid the money, Wolf and Bear sent payments to Seetarram through her "The Chocolate Box" Zelle account. 
Courts have held that "[t]o use domination and control to cause another entity to breach a contractual obligation for personal gain is certainly misuse of the corporate form to commit a wrong." Cobalt Partners, L.P. v GSC Capital Corp., 97 AD3d 35, 41 (1st Dept 2012). Accordingly, the first cause of action alleging a breach of contract is not dismissed as against Seetarram at this time. 
Fraud-Second Cause of Action
To establish a claim for fraud, plaintiff must demonstrate "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." Tsinias Enters. Ltd. V Taza Grocery, Inc., 172 AD3d 1271, 1272 (2d Dept 2019). Pursuant to CPLR 3016 (b), where the cause of action is grounded in misrepresentation or fraud, the circumstances constituting the wrong shall be stated in detail.
Here, assuming the facts to be true and according the plaintiffs the benefit of every favorable inference, the allegations in the AC set forth a cognizable cause of action grounded in fraud against Seetarram. The AC alleges several instances where Wolf and Bear allegedly intentionally overcharged plaintiffs and then benefitted from doing so. For example, Wolf and Bear invoiced plaintiffs for work allegedly completed by a computer programmer. When plaintiffs asked for the underlying invoice and proof of payment by Wolf and Bear to the programmer, the invoices received were cleared of all metadata and had actually been fraudulently created by Wolf and Bear, and not the programmer. 
According to Seetarram, the fraud claim must be dismissed as Wolf and Bear is the party who rendered the invoices that are the basis of the fraud claim. However, the AC has sufficiently alleged that Seetarram was either a partner of Wolf and Bear or that she personally participated in the fraud. Where, like here, plaintiffs' causes of action are grounded in fraud, "corporate officers and directors may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally." Emby Hosiery Corp. v Tawil, 196 AD3d 462, 465 (2d Dept 2021) (internal quotation marks omitted); see also American Exp. Travel Related Services Co., Inc. v North Atlantic Resources, Inc., 261 AD2d 310, 311 (1st Dept 1999) ("a corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties and regardless of whether the corporate veil is pierced"). 
According to Seetarram, plaintiffs failed to plead sufficient facts to state their causes of action. However, "the complaint alleged all of the elements constituting fraud, and further stated the basic facts to establish those elements, as required by CPLR 3016 (b)"). Minico Ins. Agency, LLC v AJP Contr. Corp., 166 AD3d 605, 607 (2d Dept 2018) (internal quotation marks and citations omitted). Although fraud claims have a heightened pleading requirement, courts have held that the purpose of this requirement "is to inform a defendant with respect to the incidents complained of and should not be confused with unassailable proof of fraud." Id. at 607-608. As noted above, here, although plaintiffs were relying on Wolf and Bear for the accuracy of these invoices, Wolf and Bear misrepresented to plaintiffs that the invoices were legitimate. Plaintiffs paid the invoices and sustained damages as a result. 
Accordingly, for the reasons provided above, Seetarram's motion to dismiss the fraud claim is denied. See e.g. Great Eagle Intl. Trade, Ltd. v Corporate Funding Partners, LLC, 104 AD3d 731, 732 (2d Dept 2013) ("At this early juncture, accepting the factual allegations in the complaint as true, including the allegations as to the corporate positions and titles of these individual appellants, and according the plaintiffs every favorable inference, the plaintiffs adequately pleaded facts from which it could be inferred that these individuals were involved in or knew about the alleged fraudulent conduct"). 
Breach of Fiduciary Duty-Third Cause of Action
"In order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." Hoeg Corp. v Peebles Corp., 153 AD3d 697, 609 (2d Dept 2017) (internal quotation marks omitted). Courts have found that "[a] fiduciary relationship is necessarily fact-specific and is also grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." Toobian v Golzad, 193 AD3d 784, 789 (2d Dept 2021) (internal quotation marks and citations omitted). 
According to Seetarram, defendants were hired as an independent contractor and there were no circumstances giving rise to a fiduciary relationship between herself and plaintiffs. 
In opposition, plaintiffs argue that Seetarram stood in a position of trust giving rise to a fiduciary duty. Here, the AC alleged that defendants, including Seetarram, were hired based on their expertise and were provided with complete access and control over plaintiffs' email accounts, social medica pages, passwords, and other data integral to WBN's success. Seetarram allegedly owed plaintiffs a fiduciary duty not to harm plaintiffs. The AC alleges that Seetarram attempted to harm plaintiffs' business, by, among other things, creating a boycott website, stealing WBN's logo, and creating fake social media accounts. In addition, Seetarram and/or Wolf and Bear held control over the digital assets until they received the $87,582.00, which consisted of fraudulent invoices. Plaintiffs claim that they can establish damages, as they paid this money. They also claim they were unable to gain entry into the google account. 
The Court finds that the AC has sufficiently alleged a cause of action for breach of fiduciary duty against Seetarram. Again, at this time, the relationship between Seetarram, Smith and Wolf and Bear is unclear and can only be determined after discovery. It is well settled that, "[w]hether the complaint will later survive a motion for summary judgment, or whether the plaintiff will ultimately be able to prove its claims, of course, plays no part in the determination of a prediscovery CPLR 3211 motion to dismiss." Endless Ocean, LLC v Twomey, Latham, Shea, Kelley, Dubin & Quartararo, 113 AD3d at 589. 
Breach of the Implied Covenant of Good Faith and Fair Dealing-Fourth Cause of Action
"[A] covenant of good faith and fair dealing is implicit in all contracts. This covenant is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." Gettinger Assoc., L.P. v Abraham Kamber Co. LLC, 83 AD3d 412, 414 (1st Dept 2011) (internal quotation marks and citations omitted). 
Here, the breach of the implied covenant of good faith cause of action is premised on the same conduct alleged in the breach of contract cause of action, and is dismissed as "duplicative of the breach of contract claim." Grazioli v Encompass Ins. Co., 40 AD3d 696, 697 (2d Dept 2007) (internal quotation marks omitted). 
Computer Fraud and Abuse Act and Stored Communication Act-Fifth and Eighth Causes of [*5]Action
The Computer Fraud and Abuse Act (CFAA), as codified under 18 USC § 1030, provides a cause of action against a person or entity who, as relevant here, "[i]ntentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains. . . . information from any protected computer" or who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period" 18 USC § 1030 (a) (2) (4). "While the CFAA is primarily a criminal statute . . . it includes a limited private right of action." Poller v BioScrip, Inc., 974 F Supp 2d 204, 232 (SD NY 2013), citing 18 USC § 1030 (g).
The AC alleges that after Wolf and Bear dissolved its relationship with WBN, defendants exceeding their authorization by locking plaintiffs out of the account and manipulating the information. Further, defendants allegedly acted with intent to defraud as shown by their collection of the blackmail money and their harassing conduct. The AC alleges that plaintiffs were forced to spend at least $5,000 to protect their systems as result of the defendants' conduct. 
Seetarram argues that this cause of action should be dismissed, as the only allegation pertaining to her specifically is that she exercised sole control over WBN's social media account. According to Seetarram, the documentary evidence shows that she did not have sole control. However, the emails provided by Seetarram just raise questions of fact as whether anyone other than Wolf and Bear, Smith and/or Seetarram had sole access to the social media accounts during the relevant time period. 
In the AC, plaintiffs allege that defendants' unauthorized activity with respect to the digital data, described in detail in the AC, forced plaintiffs to incur costs of more than $5,000 in remediation. Accordingly, at this time, plaintiffs' allegations adequately state a claim under the CFAA against Seetarram. 
Similar to the CFAA, the Stored Communications Act, as codified under 18 USC § 2701, "prohibits accessing another person's emails without authorization." SpecSimple, Inc. v Designer Pages Online LLC, 56 Misc 3d 700, 712 (Sup Ct, NY County 2017). The AC alleges that defendants intentionally gained unauthorized access to private emails, prevented plaintiffs from accessing them, and used this information to harm plaintiffs. For example, the AC specifically alleged that "[d]efendants' knowledge they were in possession of such material was evident, as their many online personas frequently posted snippets of recordings, private e-mails sent by WBN team members, videos, and Google Analytics data." Seetarram argues that this cause of action should be dismissed as there is no allegation that she personally had unauthorized access to electronic communications or data. However, as with the remaining causes of action, this cause of action is not dismissed at this time as the AC sufficiently pleads a claim that Seetarram and/or Wolf and Bear, and used this information to malign WBN in the fake online personas. 
Conversion-Sixth Cause of Action
"To establish a cause of action in conversion, a plaintiff must allege legal ownership or an immediate right of possession to specifically identifiable funds and that the defendant exercised an unauthorized dominion over such funds to the exclusion of the plaintiff's rights." CSI Group, LLP v Harper, 153 AD3d 1314, 1320-1321 (2d Dept 2017) (internal quotation marks and citations omitted). However, it is well settled that "intangible property such as websites and [*6]account information can be the object of conversion under New York law." Brown v Twitter, 2021 US Dist Lexis 164909, *25 (SD NY 2021). Further, "unauthorized retention of information including passwords and other login information for websites, email accounts, and social media accounts, as well as for third-party servers where plaintiffs stored content, could form the basis of a claim of conversion." Id. at *25-26 (internal quotation marks and citation omitted). 
The AC alleges that "[a] similar attempt to poison WBN by linking it to pertinent news events was Defendants' posting of an interview undertaken by Matt Tallarini with a gentleman from Pakistan . . . Review of data from WBN's YouTube account demonstrates that once Defendants locked Plaintiffs out of their account, Defendants edited the hashtags and data associated with the interview to have pro-Palestinian hashtags. In doing so, Defendants on one hand attempted to polarize baseball fans through politics and, on the other, falsely broadcasted to the world that Plaintiffs did not know the difference between Pakistan and Palestine." 
Specifically, on the basis of these allegations, the motion to dismiss the conversion claim is denied. The AC alleges that plaintiffs have a possessory interest in their google account, emails, YouTube page, among other things, which are intangible property. Further, Wolf and Bear and/or Seetarram, who was personally responsible for social media, allegedly took dominion over property, including the YouTube account, that has value to plaintiffs, in derogation of plaintiffs' rights. 
Tortious Interference with Existing and Prospective Economic Relations-Seventh Cause of Action
To establish a claim for tortious interference with prospective business relations, "a plaintiff must show that the defendant used wrongful and tortious means to interfere with the prospective business, based solely on malicious grounds." Baldeo v Majeed, 150 AD3d 942, 945 (2d Dept 2017); see also Carvel Corp. v Noonan, 3 NY3d 182, 192 (2004) (internal quotation marks and citations omitted) ("in order for a party to make out a claim for tortious interference with prospective economic advantage, the defendant must . . . direct some activities towards the third party").
The AC alleges that defendants engaged in online harassment with the intent of destroying plaintiffs' business. Other baseball organization were allegedly "tagged," in an attempt to induce those organizations to form a negative opinion of WBN and decline to enter into a relationship with them. Defendants also purportedly needlessly copied outside companies and third-party vendors in emails to WBN, prompting vendors not to engage with WBN. 
Here, however, the seventh cause of action alleging tortious interference fails because the plaintiffs have not established how the alleged online harassing conduct was directed towards a third party that had an existing or prospective business relationship with WBN. 
In addition, "[t]ortious interference with prospective economic relations requires an allegation that plaintiff would have entered into an economic relationship but for the defendant's wrongful conduct." Vigoda v DCA Prods. Plus Inc., 293 AD2d 265, 266 (1st Dept 2004). Thus, plaintiffs' claim also fails on the basis that the AC does not identify any specific business relationship that was lost due to defendants' interference. See e.g. Id. at 267 ("As plaintiffs cannot name the parties to any specific contract they would have obtained had they performed at the NACA showcase, they have failed to satisfy the 'but for' causation required by this tort").
[*7]Replevin-Ninth Cause of Action
As plaintiffs did not oppose Seetarram's motion with respect to the ninth cause of action grounded in replevin, it is dismissed. 
Aiding and Abetting-Tenth Cause of Action
This cause of action alleges that defendants Smith and Seetarram acted in concert to engage in fraud, conversion, among the other claims. Discovery needs to proceed for the Court to determine Seetarram's relationship to Wolf and Bear and her responsibility, if any, for the sufficiently pleaded causes of action. Accordingly, the aiding and abetting cause of action is not dismissed at this time. 
All other arguments raised on this motion by the parties in connection thereto have been considered by this court notwithstanding the specific absence of reference thereto.
CONCLUSION
Accordingly, it is hereby
ORDERED that defendant Edward Smith's motion to dismiss the complaint (motion sequence 001) is denied; and it is further
ORDERED that defendant Sabrina Seetarram's motion to dismiss the amended complaint pursuant to CPLR 3211 (a) (1) and (7) (motion sequence 003) is granted to the extent that the fourth, seventh and ninth causes of action are dismissed; and it is further
ORDERED that the remainder of defendant Sabrina Seetarram's motion is denied; and it is further 
ORDERED that defendants shall serve their answers within ten days of service of this order with notice of entry (see CPLR 3211[f]).
The Court will subsequently provide the parties with instructions on filing the preliminary conference stipulation. 
Dated: February 28, 2025
White Plains, New York
HON. WILLIAM J. GIACOMO, J.S.C.